# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| YAN SUI, PEI-U YANG, | ) |
| Plaintiffs, | ) No. SACV 10-01973 JAK (AJW) |
| v. | ) MEMORANDUM AND ORDER |
| | ) DISMISSING COMPLAINT |
| SOUTHSIDE TOWING, et al., | ) WITH LEAVE TO AMEND |
| Defendants. | ) |

## Proceedings

Plaintiffs Yan Sui ("Sui") and Pei-yu Yang ("Yang") signed and filed a verified complaint for damages against defendants Southside Towing ("Southside"), David Padua ("Padua"), Richard Rodrigues ("Rodrigues"), and Does 1 through 10. Plaintiffs allege that Southside and its "alter egos" and "agents"—Padua, Rodrigues, and the Doe defendants—violated plaintiffs' rights under federal and state law in connection with the towing and selling of plaintiffs' vehicle and the reporting of a debt against Yang. The complaint pleads claims for relief pursuant to 42 U.S.C. § 1983, the Fair Credit Reporting Act ("FCRA"), see 15 U.S.C. § 1681s-2, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), see Cal. Civ. Code §§ 1785 et seq.

Because the complaint fails to state a federal claim on which relief can be granted, it is dismissed with leave to amend. Plaintiffs have three options:

(1)   Plaintiffs **may continue this action in this court** by filing a document labeled **"First Amended

1 **Complaint"** within **twenty-one (21) days** of the date of this order. To withstand dismissal, the amended complaint must attempt to correct the factual and legal defects described below.

(2) Plaintiffs **may file a "Notice of Intent Not to Amend Complaint"** within **twenty-one (21) days** of the date of this order. The timely filing of a notice of intent not to amend will be construed as an indication that plaintiffs wish to challenge dismissal of the complaint by seeking review of this order in the Ninth Circuit Court of Appeals. If the court receives timely written notice of plaintiffs' intent not to file an amended complaint, this action will be dismissed with prejudice, and plaintiffs will be free to appeal the order of dismissal. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1063-1066 (9th Cir. 2004); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

(3) Plaintiffs **may do nothing in response to this order**. If plaintiffs do not respond to this order by filing either a timely amended complaint or a timely notice of intent not to amend, plaintiffs will be deemed to have consented to the dismissal of this action with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and failure to comply with this order. See Edwards, 356 F.3d at 1063-1066.

**Plaintiffs' Allegations**

The following facts are derived from the complaint and attached exhibits. Plaintiffs are homeowners and members of the "2176 Pacific Homeowners Association" (the "HOA"). In September 2006, the HOA notified plaintiffs that by parking their van, which was disabled, in their assigned parking space, they were in violation of HOA rules and regulations. Yang was the registered owner of the van, and Sui was the primary driver. On February 10, 2007, after notice to plaintiffs, Southside towed plaintiffs' van at the behest of the HOA. The HOA did not amend the "CC&Rs" (covenants, conditions, and restrictions) with respect to the parking rules and maintained that no amendment was required to adopt rules to address parking issues. On "information and belief," plaintiffs allege that there were no current, effective, amended parking rules that disallowed the parking of the van.

The tow truck driver told Sui that the van would be sent directly to the junk yard to be disposed of. On February 23, 2007, however, Southside sent plaintiffs a "Notice of Pending Lien Sale for Vehicle Valued at $4,000 or less." The Notice stated that the amount of Southside's lien for storage and towing was $681. Plaintiffs contested the lien with the California Department of Motor Vehicles.

1   On May 14, 2007, Southside reported a debt of $1,597 against Yang resulting from the accrued towing and storage charges.

In February 2010, "as a direct result of" the debt reported by Southside, plaintiffs' attempt to refinance their mortgage was unsuccessful, and Yang's credit application to Discover Financial Services was denied.

On May 20, 2010, Southside sent Yang a letter demanding payment of a debt in the amount of $2,098.85. Plaintiffs allege that defendants "conspired with" the HOA "to conceal the material fact that there were no effective parking rules to tow away the van," and that they did not immediately "dump" the van but instead intended to sell it and charge plaintiffs.

Plaintiffs' first claim for relief is a section 1983 Fourth Amendment claim against all defendants alleging that defendants unlawfully seized plaintiffs van, depriving plaintiff's of their rights to be free from unreasonable seizures, to be free from the infliction of cruel and unusual punishment, and not to be deprived of property without due process of law. [Complaint 5-7]. Plaintiff's second claim for relief is a section 1983 claim against all defendants alleging that defendants' seizure and sale of the van and the reporting of a "false debt" against Yang deprived plaintiffs of their property and "shock the conscience," in violation of plaintiffs' Fourteenth Amendment substantive due process rights. [Complaint 7-8]. Plaintiffs' third claim for relief is for intentionally and maliciously reporting a false debt against Yang in violation of the FCRA, 15 U.S.C. § 1681s-2. [Complaint 8-9]. Plaintiff's fourth claim for relief is for intentionally and maliciously reporting a false debt against Yang in violation of the CCRAA, California Civil Code § 1785 et seq. [Complaint 9-10].

Plaintiffs pray for compensatory damages in the amount of $3,248.85, punitive damages in the amount of $29,239.65, attorneys' fees in the amount of $2,500, costs of suit, and "such other and further relief as the Court may deem just, proper, and appropriate." [Complaint 11].

## Discussion

**Plaintiffs' pro se status**

Plaintiffs' complaint and attached verification were signed by both Sui and Yang as plaintiffs. However, at least some of the claims plaintiffs seek to litigate in this action are for vindication of rights that are personal to Yang rather than Sui. For example, the complaint alleges that Yang was the registered owner

of the van and that Sui merely drove it. The complaint also alleges that Yang's credit report was adversely affected by the reporting of a "false debt."

A pro se litigant such as Sui cannot appear in this action on his wife's behalf or act as her representative merely to assist her in litigating her claims, even if he has her authorization to do so. See 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); C. D. Cal. Local. R. 83-2.10.2 *(*"Any person representing himself or herself without an attorney must appear pro se for such purpose. That representation *may not be delegated to any other person, including a spouse,* parent or other relative, nor to any other party on the same side who is not represented by an attorney. A non-attorney guardian for a minor or an incompetent person must be represented by counsel.") (italics added); Johns v. County of San Diego, 114 F.3d 874, 876-877 (9th Cir. 1997) (explaining that constitutional claims are personal and cannot be asserted vicariously, and that a non-attorney may appear pro se on his own behalf but has no authority to appear as an attorney for others, and that these principles bar a non-attorney from representing minors or incompetents); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam) (holding that a pro se prisoner may not litigate the interests of other prisoners in a class action); Russell v. United States of America, 308 F.2d 78, 79 (9th Cir. 1962) (per curiam) ( "A litigant appearing in propria persona has no authority to represent anyone other than himself.").

If Sui is alleging claims to vindicate his own federal rights, those claims should be brought in a separate pro se lawsuit in his own name, and any claims Yang wishes to bring in this action to remedy violations of her federal right should be prosecuted by her in her name only.

A complaint may be dismissed for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, — U.S.—, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S.544, 570 (2007), and citing Twombly, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal

quotation marks and ellipsis omitted). The court must accept as true all factual allegations contained in the complaint. That principle, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1950. A pro se complaint, however, is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)(stating that "we continue to construe pro se filings liberally when evaluating them under Iqbal," and "particularly in civil rights cases, . . . to afford the [plaintiff] the benefit of any doubt") (quoting Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).

**Section 1983 claims**

The complaint alleges that defendants violated one or both plaintiffs' Fourth Amendment rights and one or both plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment.

A section 1983 plaintiff bears the burden of pleading and proving two essential elements: (1) conduct that deprived the plaintiff of a right, privilege, or immunity protected by the Constitution or laws of the United States; and (2) the alleged deprivation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Johnson v. Knowles, 113 F.3d 1114, 1119 (9th Cir.), cert. denied, 522 U.S. 996 (1997); Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988). "Although section 1983's under-color-of-state-law requirement is technically separate from the Fourteenth Amendment's state-action requirement, the two inquiries are closely related. Because the Plaintiffs are required to establish state action for purposes of their constitutional claims, [the court] treats the under-color-of-state-law requirement and the state-action requirement as equivalent." Johnson,113 F.3d at 1118 (internal quotation marks and citations omitted). Accordingly, plaintiff s have the burden of pleading and proving that defendants are "state actors" for purposes of his section 1983 claim. A "bare allegation" of joint action is insufficient; "the plaintiff must allege facts tending to show that [the defendants] acted under color of state law or authority." DeGrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2007) (internal quotation marks omitted).

State action may exist when private parties are "willful participant[s] in joint activity with the State or its agents that effects a constitutional deprivation." Johnson, 113 F.3d at 1119 (discussing the tests for determining state action) (internal quotation marks omitted). The focus of the joint action inquiry is whether

the state has "so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in that challenged activity." Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961); Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989), cert. denied, 453 U.S. 1096 (1990). Courts, however, "start with the presumption that private conduct does not constitute governmental action." Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999); see Price v. Hawaii, 939 F.2d 702, 707-708 (9th Cir.1991) ("[P]rivate parties are not generally acting under color of state law, and . . . conclusionary allegations, unsupported by facts, will be rejected as insufficient to state a claim under the Civil Rights Act.") (internal alterations and quotation marks omitted).

A private towing agency may act under color of law if it acts at the request of the police. See Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1322 (9th Cir. 1982); Stypmann v. City and County of San Francisco, 557 F.2d 1338, 1341-1342 (9th Cir. 1977). Southside, however, acted at the request of the HOA, which is a private association. Standing alone, the fact that state law governs the formation and operation of the HOA, see Cal. Civ. Code §§ 1350 et seq., does not make the HOA a state actor. Cf. Jackson v. Metropolitan Edison, 419 U.S. 345, 350-351, 358-359 (1974) (holding that the mere fact that a privately owned utility was subject to extensive state protection and regulation and acted in a manner authorized by state law did not convert the utility's action into state action); see also Rendell-Baker v. Kohn, 457 U.S. 830, 840-843 (1982) (holding that a private school was not a state actor despite extensive state regulation and funding).

Plaintiffs have not alleged any facts tending to show that defendants acted under color of state law, and therefore the complaint fails to state a section 1983 claim.

**FCRA claim**

The complaint also fails to state an FCRA claim. Plaintiffs allege that defendants are liable under the FCRA, 15 U.S.C. § 1681s-2, for intentionally and maliciously reporting a false debt against Yang, which caused permanent damage to her "credit standing" and the denial of her applications for credit. [Complaint 9].

"[T]to ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to CRAs [credit reporting agencies], called 'furnishers' in the statute." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009) (footnote omitted), cert. denied, – U.S.–.

131 S.Ct. 71 (2010). Those obligations are set forth in subsection (a) and subsection (b) of 15 U.S.C. 1681s-2.

Under subsection (a), furnishers have a duty "to provide accurate information" to CRAs. To that end, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency" if: (1) "the person knows or has reasonable cause to believe that the information is inaccurate," 15 U.S.C. § 1681s-2(a)(1)(A), or (2) "the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate," and "the information is, in fact, inaccurate." 15 U.S.C. § 1681s-2(a)(1)(B). For purposes of subsection (a), "the term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D).

Under subsection (b), a furnisher of information incurs certain obligations "upon notice of dispute," that is, when a furnisher receives notice from the CRA that the consumer disputes the information. After receiving notice of a dispute from a CRA, a furnisher is obliged to conduct an investigation, remedy inaccurate or incomplete information, and report the results of the investigation to the CRA. See 15 U.S.C. §§ 1681s-2(b)(1), 1681i(a)(2); Gorman, 584 F.3d at 1154. "These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." Gorman, 584 F.3d at 1154 (citing Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059-1060 (9th Cir. 2002)).

Plaintiffs' complaint does not specify whether plaintiffs are suing under subsection (a) or subsection (b) of section 1681s-2, but the complaint is legally insufficient under either subsection. No private right of action exists to enforce the obligations imposed on furnishers of information under subsection (a). See Gorman, 584 F.3d at 1154 ("The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements. However, § 1681s-2 limits this private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a CRA. . . . Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies.") (citing 15 U.S.C. §§ 1681n & 1681o; Nelson, 282 F.3d at 1059).

While subsection (b) is privately enforceable, plaintiffs have not alleged the elements of a claim

under that subsection. Whether defendants discharged their obligations under subsection (b) turns on whether Southside received notice of a dispute from a CRA and the reasonableness of any investigation it conducted "in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." Gorman, 584 F.3d at 1157; see also Gorman, 584 F.3d at 1158-1159 (holding that vague or incomplete notices of disputes did not trigger a furnisher's obligation to investigate particular transactions). Plaintiffs have not alleged that they disputed the information with a CRA, that defendants received notice of plaintiff's dispute from the CRA triggering the obligations set forth in subsection (b), or that defendants breached those obligations. See Gorman, 584 F.3d at 1161 ("[T]he requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."). Therefore, the complaint does not state a claim against defendants under the FCRA.

For the reasons described above, the complaint does not state a federal claim against defendants.

**State law claim**

In the absence of a cognizable federal claim, there is no basis for exercising supplemental jurisdiction over plaintiff's state law claim under the CCRAA. See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

**Conclusion**

For the reasons described above, the complaint fails to state a cognizable federal claim. Accordingly, the complaint is dismissed in its entirety pursuant to Rule 12(b)(6). Since it is not absolutely clear that the deficiencies of the complaint cannot be cured by amendment, the complaint is dismissed with leave to amend in accordance with the instructions set forth above. See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (stating that leave to amend should be granted when a complaint is dismissed under 28 U.S.C. § 1915(e) "if it appears at all possible that the plaintiff can correct the defect")

**IT IS SO ORDERED.**

July 18, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge